UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**MARLIN OILFIELD DIVERS, INC.**               **CIVIL ACTION**

**VERSUS**                                     **NO: 20-2431 C/W 21-575**

**ALLIED SHIPYARD, INC.**                      **SECTION: "H"**

### ORDER AND REASONS

Before the Court is Defendant Allied Shipyard, Inc.'s Motion to Dismiss, or Alternatively, Motion for Summary Judgment to Limit Damages (Doc. 62). The Court previously denied the Motion for the following reasons (Doc. 79).

### BACKGROUND

Plaintiffs Blue Marlin, LLC and Marlin Oilfield Divers, Inc. are the owner and bareboat charterer, respectively, of the M/V IRON MAIDEN. Marlin Oilfield Divers, Inc. ("MODI") entered into an agreement with Defendant Allied Shipyard, Inc. ("Allied") for repair work to be performed on the IRON MAIDEN in Allied's yard. The agreement was personally guaranteed by Logan Moore, MODI's president and CEO. On April 16, 2020, a fire broke out aboard the IRON MAIDEN in the Allied yard, and the vessel was damaged. The parties dispute the cause of the fire. Plaintiffs bring a breach of contract claim

1

and negligence claim against Allied for causing the fire, and Liberty Mutual Insurance Co. and Atlantic Specialty Insurance Co., the hull insurers of the IRON MAIDEN, have intervened against Allied for the amount they paid for the damage to the vessel.

In the instant Motion, Allied sets forth two arguments to limit Plaintiffs' potential damages. First, it asks this Court to hold that Allied and MODI entered into a contract that contained a "Red Letter Clause," limiting Plaintiffs' recovery to $250,000. In the alternative, if Plaintiffs' recovery sounds in tort, it asks the Court to limit their recovery to $900,000, the fair market value of the IRON MAIDEN at the time of the fire, pursuant to maritime tort law. Both Plaintiffs and Intervenors oppose.

## LEGAL STANDARD

Although Defendant styles this Motion as a Motion to Dismiss, the volume of exhibits attached and referenced by both parties renders summary judgment a more appropriate standard by which to consider it. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[2]

---

[1] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).
[2] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[3] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[4] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[5] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[6] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[7] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[8]

---

[3] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).
[4] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[5] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
[6] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[7] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[8] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

**LAW AND ANALYSIS**

The Court will consider each of Allied's arguments for limiting Plaintiffs' damages in turn.

**A. Contract Damages**

First, Allied asks this Court to hold that Plaintiffs' damages are limited by the Red Letter Clause contained in the work agreement entered into between Allied and MODI regarding the repairs needed on the IRON MAIDEN. "It is well settled that a contract to repair a vessel is maritime. . . . Federal law governs the construction of the terms of the repair contract."[9] "The terms of a maritime contract are given their plain meaning unless the provision is ambiguous. If a contract's 'language as a whole is clear, explicit, and leads to no absurd consequences, and as such it can be given only one reasonable interpretation,' it is not ambiguous."[10] If the contract is ambiguous, a court may look beyond the written language of the contract to determine the intent of the parties.[11]

Allied argues that it is undisputed that MODI signed a contract with Allied that contained a Red Letter Clause, limiting its potential damages. The Court, however, finds this point to be quite disputed. According to Allied, it sent an agreement to MODI's president and CEO, Logan Moore, which contained the Red Letter Clause at issue. However, the agreement that Mr. Moore signed and returned does not contain a legible Red Letter Clause. Allied

---

[9] Alcoa S.S. Co. v. Charles Ferran & Co., 383 F.2d 46, 50 (5th Cir. 1967).
[10] BP Expl. & Prod. Inc. v. Cashman Equip. Corp., 132 F. Supp. 3d 876, 884 (S.D. Tex. 2015), *on reconsideration in part*, No. A. H-13-3046, 2016 WL 1399259 (S.D. Tex. Apr. 8, 2016) (quoting Chembulk Trading LLC v. Chemex Ltd., 393 F.3d 550, 555 n.6 (5th Cir. 2004)).
[11] *Id.*

suggests that the discrepancy was a result of the printing or scanning equipment used by Mr. Moore. Even so, the only signed agreement before this Court undisputedly does not contain any legible, damage-limiting clause. Rather, it merely references that the work done by Allied is subject to "the Red Letter Clause at the top of this work agreement."[12] The document is therefore ambiguous as to whether the Red Letter Clause applies. Further, it is unclear whether Mr. Moore signed the agreement in his personal capacity or in his capacity as president and CEO of MODI. The parties each present contradictory parol evidence as to the parties' intent as to the work agreement. Accordingly, material issues of fact abound, and this Court cannot say that Plaintiffs' damages are limited by the Red Letter Clause.[13]

### B. Tort Damages

Next, Allied asks this Court to limit Plaintiffs' possible tort recovery to $900,000, the fair market value of the IRON MAIDEN. It argues that maritime tort law limits a plaintiff's recovery to the fair market value of the vessel and prohibits the recovery of any consequential economic loss if it is determined that the vessel is a total or constructive loss. Allied argues that it is undisputed that the IRON MAIDEN was a constructive total loss where Plaintiffs swore as much to their hull insurers and received the full agreed hull value of $900,000 from their insurers as payment for that loss.

Allied's Motion confuses the concept of constructive total loss under maritime law and under Plaintiffs' insurance coverage. Under maritime law,

---

[12] Doc. 62.
[13] In reaching this holding, the Court does not hold, as Allied suggests, that no contract exists or that Plaintiffs' claims cannot sound in contract law.

"[a] vessel is considered a constructive total loss when the damage is repairable but the cost of repairs exceeds the *fair market value* of the vessel immediately before the casualty."[14] Under the hull policy issued by Intervenors on the IRON MAIDEN, a vessel is considered a constructive total loss when repairs exceed the agreed value of the vessel, or $900,000.[15] It is well-settled that "the insured value is not controlling as to the fair market value prior to the accident."[16] Allied admits that the fair market value of the IRON MAIDEN is a contested, factual issue in this case. Because there is a material issue of fact as to the fair market value of the IRON MAIDEN, there is also a dispute over whether the vessel was a constructive total loss as defined by maritime law. Accordingly, this Court cannot say that Plaintiffs' damages are limited to only those recoverable when a vessel is a constructive total loss.

## CONCLUSION

For the foregoing reasons, the Motion is **DENIED**.

New Orleans, Louisiana this 3rd day of February, 2022.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[14] Gaines Towing & Transp., Inc. v. Atlantia Tanker Corp., 191 F.3d 633, 635 (5th Cir. 1999) (emphasis added).
[15] Doc. 37-1.
[16] Sneed Shipbuilding, Inc. v. M/V Rachel D. Charpentier, No. 1:06-CV-246-TH, 2008 WL 11449210, at *14 (E.D. Tex. Nov. 17, 2008).